United States District Court
Middle District of Florida
Jacksonville Division

Civil Rights Complaint Form

3:02-cv-439-J-21TEM

2002 MAY -6  A 10: 22

FILED

Laurence Spindler
   Plaintiff

     vs.        Case #

· Florida Dept. of Corrections (Michael Moore)
· Central Florida Reception Center (Warden)
· South Florida Reception Center (Warden)
· North Florida Reception Center (Warden)
· North Florida Reception Center (West) (Warden)
· Hendry Corr. Inst.      ( Warden)
· Hardee Corr. Inst.      ( Warden)
· Okaloosa Corr. Inst.    ( Warden)
· Gulf Corr. Inst.        ( Warden)
· New River Corr. Inst. (West) (Warden)
· Appalachee Corr. Inst   ( Warden)
  Baker Corr. Inst.       ( Warden)
  Hamilton Corr. Inst. Annex (Warden)
  Et Al,  Also:

Personally and in official capacity,
Dr. Klein Hans
R. Woods
Dr. Havens
Dr. Gladson
Nurse Brown
Nurse Avis
Dr. Escavia
Mary Jane Rays
Dr. Dhong
Dr. Johanson
Dr. L.E. Chuong
Dr. Arteaga
Nurse Jefferson
Dr. Manuel Emanuel
Warden L.E. Turner
Dr. Azcuy
Dr. Kavinatan
Dr/Nurse Oaks
Ray Smith
Dr. Radi
Nurse Cooley
Nurse Paige
Nurse Taylor

DR. CONSUEGA
DR. L. SCHLOFMAN
DR. MENDEZ
DR. LE.
DR. SOLORZANO R,
NURSE HENDERSON
   ET AL
          DEFENDANTS

① Present Place of Confinement:
     AK-F 1101-L
     Hamilton Corr. Inst. Annex
     11419 CR 249
     Jasper, Florida  32052

⑤ Does The Complaint concern events
   occurring on or after March 25, 92
   in F.D.O.C.?         Yes.

     A(1) D.D You Submit an Above-mentioned
   Grievance to the Warden or Office of
   Secretary?      No, it was not an
   "Emergency" or of "Sensitive Nature".

D.   Appeal to The Office of
The Secretary.

1) Did You Submit an Appeal?
Yes.

2) Copy Included?

I, Declare that The Foregoing
Answers to Question II Are True
And Correct.

Signed _____ Date: 4/30/02

III   Does Your Complaint
Concern events in The Fla. Dept.
of Corr. Prior to march 25, 92?
No.

IV
A) No Lawsuits Have Been initiated
in State Court with The Same or Similar
Facts or Circumstances.

A(2) ———————

A (3)   Were you Denied emergency
Status ?   NO.

B.   Informal Grievance

1)  Did you Submit an Informal
Grievance ?   Yes.

2)  Copy Included

C.  Formal Grievance

1)  Did you Have a Disciplinary
Hearing in this matter ?   NO.

2) ———————

3)  Did you Submit a Formal
Grievance ?   NO.

4) ———————

# Exhaustion Note

The Plaintiff is going to have to
broad discovery in order to prove +
exhaustion as the Dept. of Correction's
has lost some of the petitioners legal
papers (the required grievances included)
and the Dept. will not give forth a
statement stating exhaustion nor give
the Plaintiff copies of the grievances
w/o a court order.

Once discovery is reached the
Plaintiff will be able to prove exhaustion
by obtaining copies of the grievances
from central records. Plaintiff will also
be needing his complete medical file
which also would/should have copies
of the grievances within — this also
will have to be obtained by court order
via discovery.

B) NO LAW SUITS HAVE BEEN
INITIATED IN FEDERAL COURT WITH
THE SAME OR SIMILAR FACTS OR
CIRCUMSTANCES.

V

4)  NAME OF PLAINTIFF: Laurence Spindler
MAILING ADDRESS:  AX -F 1101 -L
                  Hamilton Corr. Inst. Annex
                  11419 CR 249
                  Jasper, Florida 32052

B)  NO ADDITIONAL PLAINTIFFS.


C)  DEFENDANT:
       Florida Dept. of Corrections
       (Michael Moore)
    ADDRESS: 2601 Blairstone Road
    Tallahassee, Florida 32399


    POSITION:
       Secretary Dept. of Corrections.

    EMPLOYED AT:
       Florida Dept. of Corrections

(D) Defendant:
     Central Florida Reception Center
           Warden John/Jane Doe

     Address: Box 628040
              Orlando, Florida 32862

     Position: Warden

     Employed At: Central Florida Rec. Center


(E) South Florida Reception Center
        Warden John/Jane Doe

     Address: Box 02-8538
              Miami, Florida 33102

     Position: Warden

     Employed At: So. Fla. Rec. Center

(F)   North Florida Reception Center (West)
      Warden   John/Jane Doe

      Address: Box 628
              Lake Butler, Florida 32054

      Position:  Warden

      Employed At: No. Fla. Rec. Ctr. (West)


(G)   Defendant:

      North Florida Reception Center (Main)
      Warden John/Jane Doe

      Address: Box 628
              Lake Butler, Florida 32054

      Position:  Warden

      Employed At:
      North Florida Reception Center (Main)

(M.) DeFenDant:

Hendry Correctional Institution
Warden John / Jane Doe

ADDress:
12551 Wainwright Drive
Immokalee, Florida 34142

Position:
Warden

Employed At:

Hendry Corr. Inst

(I) Defendant:

Hardee Correctional Institution
Warden John / Jane Doe.

ADDRESS:

6901 State RD. 62
Bowling Green, Florida 83834

Position:
Warden

Employed At:
Hardee Correctional Institution

(J) Defendant:
Okaloosa Correctional Institution
Warden John/ Jane Doe

Address:
3189 Little Silver Road
Crestview, Florida 32539

Position:
Warden

Employed At:

Okaloosa Correctional Institution

(K) Defendant:
Gulf Correctional Institution
Warden John / Jane Doe

Address:
500 Ike Steele Road.
Wewahitchka, Florida 32465

Position:
Warden

Employed At:
Gulf Correctional Institution

(L) Defendant:
New River (West) Corr. Inst.
Warden John / Jane Doe

Address:
Box 333
Raiford, Florida 32083

Position:
Warden

Employed At:
New River (West) Corr. Inst.

(m)   Defendant:
APALachee Correctional Institution
Warden  John / Jane Doe

Address:
35 APALachee Drive
Sneads, Florida  32460

Position:
Warden

Employed At:
APALachee Corr. Inst.

(N)   Defendant:
Baker Correctional Institution
Warden  John / Jane Doe

Address:
Box 500
Lake Basin Road
Sanderson, Florida  32087

Position:
        Warden

Employed At:
    Baker Correctional Institution

(6) Defendant:
Hamilton Correctional Institution (Annex)
Warden L.E. Turner

Address:
    10650 So. West 46th Str.
    Jasper, Florida 32052

Position:
        Warden

Employed At:
    Hamilton Corr. Inst. Annex

(P)    DefenDant:
        DR. KleinHaus

    ADDress:  2601 Blairstone Road
        Tallahassee, Florida  32399

    Position:
        Orthopedic Specialist.

    Employed At:
        North Florida Reception Center

(Q)    DefenDant:
        Nurse R. Woods

    ADDress:  _
        2601 Blairstone Rd.
        Tallahassee, Florida  32399

    Position:
            Nurse

    Employed At: North Fla. Rec Ctr.
    West Unit.

(u)  Defendant:
      DR. Havens

      Address:
           2601 Blairstone Road
      Tallahassee, Florida 32399

      Position:
           Doctor

      Employed At:
      North Florida Reception Center (West)

(R)  Defendant:
      DR. Gladson

      Address:
           2601 Blairstone Road
      Tallahassee, Florida 32399

      Position:
           Doctor

      Employed At:
      New River (West) Corr. Inst

(S) Defendant:
   Nurse Brown.

   Address:
       2601 Blairstone Road
   Tallahassee, Florida 32399

   Position:
       Nurse

   Employed At: Baker Corr. Inst.


(T) Defendant:
   Nurse Avis

   Address:
       2601 Blairstone Road
   Tallahassee, Florida 32399

   Position:
       Nurse

   Employed At: Baker Corr. Inst.

(V)  DEFENDANT:
        DR. ESCAVIA

     ADDRESS:
        2601 Blairstone Road
        Tallahassee, Florida 32399

     Position:
        Doctor

     Employed At: North Fla. Rec. Ctr.

(W)  DEFENDANT:
        MARY JANE DOES

     ADDRESS:
        2601 Blairstone Road
        Tallahassee, Florida 32399

     Position:
        Brace Specialist

     Employed At:
        North Florida Reception Center

(X) Defendant:
DR. DHONG

Address:
2601 Blairstone Road
Tallahassee, Florida 32399

Position:
Doctor

Employed At: Baker Corr. Inst. /
Hamilton Corr. Inst. Annex

(Y) Defendant:
DR. Johanson

Address:
2601 Blairstone Road
Tallahassee, Florida 32399

Position:
Doctor

Employed At:
Apalachee Correctional Inst.

(Z) Defendant:
   DR. LE Chuong

   Address:
      2601 Blairstone Road
      Tallahassee, Florida 32399

   Position:
      Doctor

   Employed At:
      Hamilton Corr. Inst. Annex


(AA) Defendant:
   DR. Arteaga

   Address:
      2601 Blairstone Road
      Tallahassee, Florida 32399

   Position:
      Doctor

   Employed At: Baker Corr. Inst.

(BB)  DEFENDANT:
          Nurse. Jefferson

      ADDRESS:
          2601 Blairstone Road
          Tallahassee, Florida 32399

      Position:
          Nurse Supervisor

      Employed At:
          Baker Correctional Institution.

(CC)  DEFENDANT:
          DR. Emanuel Manuel

      ADDRESS:
          2601 Blairstone Road
          Tallahassee, Florida 32399

      Position:
          Doctor  C.H.O.

      Employed At:
          Hamilton Corr. Inst. (Annex)

(DD) Defendant:
     DR. AZCUY

     Address:
          2601 Blairstone Road
          Tallahassee, Florida 32399

     Position:
          Doctor C.M.O.

     Employed At:
          North Florida Reception Center

(EE) Defendant:
     DR. KAVINATAN

     Address:
          2601 Blairstone Road
          Tallahassee, Florida 32399

     Position:
          Doctor C.M.O.

     Employed At:
          Hamilton Corr. Inst. (Annex)

(FF) Defendant:
DR./Nurse Oaks

ADDRESS:
2601 Blairstone Road
Tallahassee, Florida 32388

Position:
Doctor/Nurse

Employed At:
Hamilton Corr. Inst. (Annex)

(GG) Defendant:
Kay Smith

Address:
2601 Blairstone Road
Tallahassee Florida

Position: SA. S.H.A.

Employed At:
Hamilton Corr. Inst (main)

(HH) Defendant:
        DR. RADI

    Address:
        2601 Blairstone Road
        Tallahassee Florida 32388

    Position:
        Gastrologist.

    Employed At:
        North Florida Reception Center

(II) Defendant:
        Nurse Cooley

    Address:
        2601 Blairstone Road
        Tallahassee, Florida 32388

    Position:
        Nurse

    Employed At:
        North Florida Reception Center

(JJ)   DEFENDANT:
          Nurse PAIGE

       ADDRESS:
          2601 Blairstone Road
          Tallahassee, Florida 32388

       Position:
          Nurse

       Employed At: Hamilton Corr Inst Annex


(KK)   DEFENDANT:
          Nurse TAYLOR

       ADDRESS:
          2601 Blairstone Road
          Tallahassee, Florida 32349

       Position:
          Nurse

       Employed At: Hamilton Corr. Inst Annex

(LL)   Defendant:
       DR   Consuega

       Address:
              2601 Blairstone Road
       Tallahassee, Florida 32399

       Position:
              Doctor

       Employed At: Baker Corr. Inst.


(mm)  Defendant:
       DR. L. Schlofman

       Address:
              2601 Blairstone Road
       Tallahassee, Florida 32399

       Position:
              Optitian

       Employed At:
              North Florida Reception Center
       Hamilton Corr. Inst. (Annex)

(NEW)  DEFENDANT:
        Nurse HenDerson

ADDRESS:
        2601 BLAIRSTONE ROAD
        Tallahassee, FLoriDa 32399

Position: .
        Nurse

EmployeD At:
HAmilton Corr. Inst. (Annex) .

## Statement of Claim

The Plaintiff states and claims his eith Amendment right to be free of cruel and unusual punishment has/is been/being violated by each of the defendants in each of the incidents/issues presented in the complaint. Also in each one of the incidents/issues presented the defendants each are guilty of neglicence, Deliberate, indifference malprndice, under the color of law

## Statement of Facts

On October 25, 1995 Plaintiff arrived at Central Florida Reception Center, after recently having a third (3rd) Anterior Cruciate Ligament Repair of my left knee, partial right thumb amputation, and major surgery to repair 10 severed tendons and two nerves also in the right wrist.

My "Street Doctor" Dr. Brasslett of All Florida Orthopedics instructed the Petitioner to inform F.S.O.C. of the need of immediate therapy for the A.C.L. Repair, or w/o the therapy the surgery would not "take" - Also informing the Plaintiff that that was the last A.C.L. Repair that could be done, and the next step was Knee Replacement.

The Plaintiff dutifully notified the Doctors at the Reception Center, and they failed to heed my notice, and offer of operational reports from the doctor. They also failed to obtain the information themselves.

At the time the Plaintiff had well-cushioned proper footwear which he purchased while still free. These shoes wore out in short order, and the medical department refused

to Replace them with Similarly Qualified
Well Cushioned Footwear to Prevent
Shock Damage and Pain From Walking.

This caused the Plaintiff to Have
to wear F.D.O.C. Supplied "Deck Shoes"
Which Have No Cushion and No Arch
For Proper Step. As A Result, The
Plaintiff Suffered two (2) "Broken"
Cartilages of the Left Knee After
His 1/23/96 Transfer to Hardee
Corr. Inst. The Plaintiff Was at
This time wearing the F.D.O.C. Knee
Brace That was Given to Him in Lieu
of a Working Knee.

The two Broken Cartilages caused
the Plaintiff's Knee to Lock and
Swell, Which caused considerable
Pain and Discomfort, not to mention
the Inability to Walk.

On 3/15/96 I was Finally Brought
to South Florida Reception center to
Have my Knee Problem Diagnosed and
Repaired. There the Specialist could
not Figure out what was wrong, But
wanted to operate. Sensibly, As He
Did not know what was wrong,
the Plaintiff was not going to Allow
Him to Operate.

Unknown to the Plaintiff At the
time, the Specialist wrote in the
Plaintiff's Chart That, "there is

Nothing wrong with the knee" - This
caused further delay in treatment, and
unnecessary pain and periods of
inability to walk.

There were a couple of transfers
to other institutions, then the plaintiff
was transferred to Okaloosa Corr.
Inst. where he presented the knee
problem to the medical staff. This
was on or about 10/1/96 - The
plaintiff also presented his complaint
about his wrist problems.

On 10/30/96 the plaintiff was
transported to North Florida Reception
Center (N.F.R.C.) and on 11/4/96 saw
a knee specialist there, who on
11/19/96 had an M.R.I. done, which
resulted in being sent to Jacksonville
Hospital to be seen by Dr. Kleinhans
to obtain corrective knee surgery.

On 12/30/96 the plaintiff saw a
doctor at N.F.R.C. who prescribed
a knee brace, and on 2/10/97 the
plaintiff was measured for a brace
by Mary Jane Ross and Associates
at the Knee/Brace Clinic, and a
brace was ordered.

The surgery that Dr. Kleinhans
did left the knee positioned wrong
where the petitioner to date has
to "pop" or "snap" the knee into

Proper position in order to relieve some of the constant pain he experiences.

On 4/28/87 The Plaintiff received his Brace, and upon installing the Brace and attempting to walk, There was a startlingly loud "Pop" which came from the Plaintiffs out-of-place knee. The Brace specialist merely asked if I could still walk, totally unconcerned about the Pop, whether or not he was in pain, or any other factor. The Plaintiff was instructed "To wear the Brace whenever walking, until the knee is replaced, if ever".

This appears to be a semi-permanent disability caused by F.D.O.C's Indifferent medical staff.

The Plaintiff was issued a Permanent 10 minute no prolonged standing pass on 4/28/87 By The Doctor.

On 5/7/97 The Plaintiff received a "Low Bunk", "No Work", "Cane", "Brace", Pass, and The "Permanent" No Prolonged Standing 10 minute Pass was Reversed By S.R.N. R Woods a Nurse, and issued a 20 minute Pass instead

The Plaintiff had a hard time trying to stand for 10 minutes, and the 20 minute Pass causes

The Plaintiff undue and considerable pain. As he is Forced to stand for the limit.

Ever since the Brace was issued, and worn for a few days it caused the Plaintiff considerable pain - This is Due to screws that were installed in the Plaintiffs knee during the several repairs, and the Brace's anchoring straps ride right on top of these screws - The Plaintiff made his complaint known, and the complaint was ignored.

On 7/23/87 at N.F.R.C. West unit, the Plaintiff said Dr. Havens, and complained about feet pain, because the Deck shoes were the wrong size, had no cushion, and no arch, and were damaging my knees by being forced to always walk (or stand) on hard surfaces. She stated " "(F.D.O.C. and medical) don't give a damn about (my) feet, there is nothing wrong with them". Totally D.'s Regarding the fact the Plaintiff could barely walk because of the pain experienced from wearing the wrong size shoes with no cushion and no arch which in turn causes considerable knee pain, in conjunction to the pain from the improper Brace.

She also stated that (According to Record) that their knee Doctor (Dr. Azcuy) Stated that He's "not Qualified to Deal with (my) Knee" and "(He) Has Reached the Peak of His Ability". She Further Stated that they Have No other more Qualified Knee Doctor. She Refused also to Renew the Plaintiffs "No Work" Pass Even though She could See He was Barely Able to walk.

On 8/15/97 the Plaintiff was Transferred to New Asset West C.I., and again Presented all His medical Problems.

On 8/26/97 He was Seen By Dr. Gladson who refused to do anything About the Foot Knee or Brace Problems, or the Pain caused By them.

On 8/29/97 the Plaintiff Grieved the Lack of Proper medical attention, and on 9/4/97 Saw (R.N.) Brown Requesting treatment, was Denied treatment, and was told that whatever Dr. Gladson Does, Sticks, And the Plaintiff could Do Nothing About it.

On 9/14/97 the Plaintiff Saw Lt. Starling About medical, who Stated He would try to Help.

On 8/25/97 The Plaintiff Attended Sick Call Presenting His complaints to

Nurse Avis, who stated Her Feet
Hurt too, therefore there was nothing
wrong with the Plaintiff's. Further
Stating that the Plaintiff will always Have Knee
Pain, without considering The extent or cause
of the Pain. At this time, the
Plaintiff noticed that N.F.R.C. made a
notation in His Record that He Had
No Passes. This Allowed New River
West C.I. medical Personnel to cancel
the obvious Passes that The Plaintiff was
Presently Holding and were current,
even though His medical condition had
not improved any.

On 12/18/97 DR. Gladson ordered a
Reexamination of the Plaintiff's Knee.

On 1/6/98 The Plaintiff was Trans-
-ported to N.F.R.C. and Saw Dr.
Escavia (Orthopedic Specialist) who
Refused to even look at the
Plaintiff's Knee, But Referred Him
to The Brace Clinic.

On 1/26/98 The Plaintiff Saw
Mary Jane Doe at the Brace Clinic
who Issued Quarter-Sized Pieces
of Lambs Wool to Cushion Dollar-
Sized Areas of the Brace, even
After it was explained to Her that
Cushioning Has Been tried and
Does not work.

On 2/11/98 The Plaintiff saw Dr. Dhong For His 3-month Cronic Clinic, And the Doctor Refused to treat Any of the Plaintiff's Symptoms.

On 3/2/98 The Plaintiff was sent to N.F.R.C. For An unrelated treatment, But Received 4, "No Standing, No Lifting, Low-Bunk, Brace, And Hemmaroid Cushion Pass".

On 8/31/98 The Plaintiff Attended Sick Call At New River West C.I. to Have His complaints About His Feet, Brace, medications, Hernia, Brace And Passes Addressed. None were Addressed By the Doctor.

On 10/18/98 the Plaintiff Saw the Doctor For His 3-month Cronic clinic, And Presented the complaints About, Knees, Brace, Feet, And etc, And the Doctor only Addressed the Fact that He Would Start the Process to Get the Plaintiff's Second Hernia Repaired. (This was Never Done)

On 10/28/98 The Plaintiff was transfered to Appalachee C.I. (A.C.I.) Where on 12/7/98 He Saw Dr. Johanson who stated He Would Set Him up to See A Pediatrist For his Feet. (This was never done)

9

On 1/11/99 the Plaintiff saw another Doctor at A.C.I. who informed him he no longer had a hernia (w/o an examination) and that he had no knee problems, even though the Plaintiff was obviously wearing a knee brace, and held a valid pass for the brace.

Between 1/22/99 and 2/10/99 when the Plaintiff was transfered to Gulf C.I., Dr Johanson ordered a pair of "Special Shoes" for the Plaintiff, in the form of medically supplied, well cushioned, sneakers w/ arches, of light-weight construction. This act entered the Plaintiff into a special shoe contract with the Dept. of Corrections - No Doctor since has honored that contract although medically bound to that contract by the Dept. of Corrections own rules and procedures.

Upon arrival at G.C.I., the Plaintiff's knee brace was forcibly removed and confiscated, regardless of the Plaintiff's protests and medical need of said brace. This was done by Security for no reason except to make the Plaintiff suffer.

10

On 6/15/99 the Plaintiff saw the Doctor at G.C.I, who informed him he, "would try to get (him) back (his) brace and obtain the prescribed Sneakers". He also issued, low bunk, soft shoe, no standing, no lifting, passes.

On 6/28/99 the Plaintiff received the Prescribed Sneakers, and signed the "Special Shoe Agreement" with F.B.O.C. (the Doctor would sign it later he was told). "The Reason for the Special Shoes and the Agreement was listed on Record as "Deformities".

On 7/23/99 the Plaintiff saw the Orthopedic Specialist (Dr. Loro) at N.F.R.C. about his knee. The Doctor had an X-ray taken, and ordered an M.R.I., stating even though the Plaintiffs outside (street) Doctor stated that the Last possible Reconstruction was already done, and the knee needed to be Replaced, Dr. Loro stated he would attempt another Reconstruction But the knee really needed to be Replaced - he also stated that the Dept. of Corr. would not Replace the joint as needed, nor would they pay for the brace he really needed. (The correct brace for the problem.)

On 8/17/88 the Plaintiff had an M.R.I. Done at N.F.R.C., which Revealed that there was alot of metal in the Knee (from Previous Surgeries).

On 11/5/88 The Plaintiff was transported to N.F.R.C. and Received a cheap off-the-shelf Brace — the same Brace he had been Prescribed Before Because F.D.O.C. will not Pay for The Correct Brace.

On 12/15/88 the Plaintiff had a 3-month Chronic Clinic U.S.7 with the Doctor at Baker C.I. (B.C.I.) where the Plaintiff Presented several Problems, Including the Knee Brace Problems — The Plaintiff was told By the Doctor to "wear the Brace for another 3 months (Regardless of the Pain it was Causing) until the next clinic U.S.7." The Plaintiff's medical Grade was Raised to a Grade 4. All this was Done By Dr. L.E. Chuang.

On 12/20/88 the Plaintiff attended Sick call and Presented the Knee/ Brace Problems, and nothing was Done About it.

On 1/21/00 The Plaintiff once again was transported to N.F.R.C. To see DR. Long who once again ordered/Prescribed A Custom Brace.

On 2/7/00 The Plaintiff saw The Chief Health officer (of the moment) At B.C.I. And Presented several complaints, including the need for A Replacement pair of medically needed Sneakers per the "special Shoe Agreement" Contract, And the complaints About the Brace, And the Doctor Refused to Document the complaints or do anything About them.

On 2/18/00 The Plaintiff was transported Back to N.F.R.C. to go to the Brace clinic to get the Doctor/Specialist there to sign the sheet to get the Custom Brace Approved.

On 3/7/00 The Plaintiff Attended Sick call to Attempt to get His complaints taken care of, But DR. Arteaga Rushed Him out of the office w/o even Being Seen. End of etc.7.

On 3/22/00 DR. "C" Stated He Applied for Approval of the Custom Brace (which was later Found to Be untrue) And Further Stated that

13

The Dept. of Corrections Medical
Dept. no longer supplies medically
Needed Sneakers under Any
Circumstances - (This proved also to
Be untrue as 5 minutes later the
Plaintiff saw Another inmate walk out
of the medical Department with
medically supplied Sneakers).

On 4/27/00 The Plaintiff saw the
C.M.O. at B.C.I. who stated he
would check on the Progress of
getting his Custom Brace.

On 6/1/00 at The Plaintiff's 3-
month clinic visit he was informed
that in order to check on the Brace,
the Plaintiff had to wait for the
Brace clinic to call him for it.
This is nonsensical as the Brace
clinic will not call unless the Brace
has been approved and that is what
the Plaintiff was trying to get the
Doctor to do, check on the approval.

On 6/2/00 The Plaintiff saw Nurse
Jefferson (Nursing Supervisor) at B.C.I.
To Attempt to Resolve the continual
Problem of issues Being Ignored By
the Doctors and Nurses, and to try
to get Someone to check on the
Custom Brace Approval. A Request
For Brace Approval was found to
Have Never Been Sent.

14

She ensured one was sent then.

On 7/27/00 the Plaintiff was Transfered to Hamilton Corr Inst Annex (H.C.I.) After Having His medical Grade Lowered Back down to a Grade 3 even though Nothing Had Improved And Nothing Had Been Done to Warrent A Lowering of the medical Grade. Upon Arrival the Plaintiff Held Valid Passes, including A Valid 10 minute Limit No Prolonged Standing Pass. All Were Restamped to expire on 8/4/00

On 8/7/00 The Plaintiff Still Had Not Seen The Doctor, And All Passes Had Expired And He Had to Attend Sick Call, At the Cost of $4.00, to Get the Passes Renewed, Which was Done on A temporary Basis. This took a 9 Hour Wait Sitting Silent And Still on A Board With No Back As Discouragement And/ Or Punishment For Attending Sick Call.

On 8/14/00 the Petitioner Received His Passes From H.C.I. Without the Benefit of ever Seeing The Doctor, And His 10 minute no Prolonged Standing Pass was Raised to 30 minutes Regardless of His Ability to Stand For 30 minutes. He was Also Denied A Low - Bunk Pass Which the Petitioner's Knee condition And Age Requires. He Also Was Denied A Soft-Shoe Pass.

15

On 8/22/00 The Plaintiff Finally had A 3-month chronic clinic with DR. Emanuel Manuel Receiving A Low Bunk, 1st Floor PASS, But No Soft Shoe PASS (Regardless of The Fact that He HAD Soft Shoes Supplied By medical And on Record) Although They Were worn-out. Nor would He lower The Limit on The No Standing PASS Regardless of the Petitioners Abilities or How Long (5 Years) The Petitioner HAD HAD A 10 minute Limit And Nothing HAD changed.

On 8/26/00 The Petitioner Sent The Superintendant A Request Asking For "A "Specific Package Permit" As Provided For In The "Special Shoe Agreement" In the event medical could/would Not Replace the worn-out medically needed Soft Shoes.

Shortly thereafter, the Request came Back Answered, Stating there is No Such Provision. The Petitioner Sent Back A Request Refuting that Reply, And Sent a copy of the Agreement As Proof. The Reply Still was That there was No Such Provision even after the Superintendant Saw it In Print.

On 9/13/00 The Petitioner was Sent to N.F.R.C. to See The Pulmonary Doctor About His Brace.

16

The Doctor (Azcuy) looked at the M.R.I. Report and stated he did not see anything wrong with the Plaintiff's knee; He Refused to acknowledge that his brace was "Broken" without any straps to secure it to the patients Leg, and would not listen to the reasons the custom brace was needed. The Petitioner noticed a post-it note attached to his chart that stated for the Doctor to, "Deny the need for the custom brace". The Doctor did nothing but deny the need for the custom brace.

On 10/11/00 the Petitioner saw Nurse Sistrunk, Who is at the clinic at H.C.I. For an unrelated matter and He asked her to observe the condition of his brace, and please note it in the chart. She did note that the Brace was indeed obviously Broken.

On 6/20/00 The Petitioner saw Dr. Kauwatan C.H.O. at H.C.I. at the time, who carefully went over His history of knee problems and documented his observations, using a full page in the chart. He stated He would call the Regional Medical Director personally about the Petitioners obvious need of

A NEW KNEE BRACE, AND THE CUSTOM BRACE THAT WAS PRESCRIBED IN PARTICULAR. He NOTED He WANTED TO PERSONALLY SEE THE PETITIONER AGAIN IN 10 DAYS.

ON 11/1/00 THE PETITIONER WAS CALLED-OUT TO SEE THE C.M.O. AS THE C.M.O. DIRECTED, BUT He WAS NOT WORKING THAT DAY, SO THE NURSES HAD HIM SEE NURSE OAKS, (WHICH THE MEDICAL STAFF REFERS TO AS DOCTOR OAKS, WHICH SHE IS NOT) WHO STATED THE C.M.O. HAD LEFT "NO NOTES" (EVEN THOUGH THE PETITIONER SHOWED HER A FULL PAGE OF "NOTES" BY THE C.M.O.). SHE STATED SHE COULD NOT SEE ANYTHING WRONG WITH HIS OBVIOUSLY BROKEN BRACE, FURTHER STATING THAT F.D.O.C. DOES NOT WANT TO PAY THE COST OF THE CUSTOM BRACE AND ALSO THAT F.D.O.C. WILL NEVER REPLACE THE KNEE JOINT. SHE STATED THERE IS NOTHING WRONG WITH HIS SERIOUSLY WORN-OUT MEDICALLY SUPPLIED SOFT SHOES WITH OBVIOUS SILVER DOLLAR-SIZED HOLES IN THE BOTTOM, AND WILL NOT REPLACE THEM. SHE DID LOWER HIS NO PROLONGED STANDING PASS LIMIT TO 20 MINUTES. ONLY DOUBLE OF WHAT THE PETITIONER IS ABLE TO ENDURE W/O CONSIDERABLE PAIN AND DISCOMFORT.

18

On 12/6/00 The Petitioner Attempted to Get Shoes From Mrs Gerber the Laundry Officer, And was Informed That Did not Have his Size or width, And therefore could not Supply him with Footwear. He Also Attempted to Get Some tape From medical with which to tape his Shoes together And to tape his Brace on As medical Had Been Doing, And was Refused.

On 12/11/00 the Petitioner wrote A Grievance to the Warden of H.C.I. Annex About The taped-on Shoes And Brace.

On 1/3/01 The Petitioner Received A Reply to his Previously Sent Request to See The medical Administrator Kate Smith to Resolve his medical Problems, And on 1/22/01 Actually Got to See Her. The Problems were Presented, And She Stated That She would "Work on it", And Issued him An ELASTIC Knee Brace, which was totally in Adequate For the Need.

On 2/18/01 The Petitioner Said Dr. Manuel About his Shoes And Brace (And other Problems), And He Again Desired the Brace was Broken, And the need For A Brace, Desired The Fact That the Shoes were worn-out even though they were taped-on,

But At Least This time, The Doctor Looked, From 8 Feet Away, At the Petitioners Feet.

On 3/21/01 The Petitioner Received A First-Floor, Low Bunk, And Brace Pass — But The Petitioner No Longer Had A Useable Brace. He Also Received A Soft Shoe Pass, But No Shoes to Warrent The Pass.

Since Then The Petitioner Was Given up trying to Obtain Shoes From Medical Or F.D.O.C., And turned to the Public. There Was A Response Of A Person Wanting to Send the Petitioner A Pair Of Shoes, But The Warden At H.C.I. Annex Would Not Allow it. Also The Petitioner Finally Received A New Off-The-Shelf Knee Brace, After Having His Knee Give out on Him Several times, To Be Supplied A Wheelchair For A Short Period, But Then Having the Doctor Refuse the use Of A wheelchair the Second And third time The Petitioner's Knee Gave out Before He Received His New Brace.

The Petitioner Was Forced to Wear Shower Shoes Or Nothing On His Feet For Lack Of Any Shoes.

20

Having to walk in 35° rain, "freezing cold" in order to attend meals. This fact was related to family who had finally had enough of the abuse of their relative in prison, and contacted Tallahassee and the institution. This effort brought about a pair of worn-out deck shoes being retrieved from the trash and given to the petitioner to wear. Once that fact was related to family, they got back on the phone calling the institution. This netted a new pair of inadequate deck shoes to be supplied, too large, with no cushions, and no arches. The petitioner attended sick call to attempt to receive cushions and arches, but the nurse refused to note the request in the chart or to refer the patient to the doctor, after telling him he would have to see the doctor, in order to receive cushions and arches.

The assistant warden has been claiming for weeks, that "special order shoes" have been ordered for the petitioner.

The petitioner still has problems with the new brace, the same

Problems he has had right alonce, plus the new brace has a manufacturer defect and one of the guides for the attaching straps is broken.

The petitioner will not attend sick call, to be charged $4.00, and to sit for 9-10 hours on a board, to see a nurse, who would refuse to refer the petitioner to the doctor, who would refuse to see that there was any problem with the brace, and would refuse to get it repaired if he did acknowledge it is broken, just to save F.D.O.C. money.

Furthermore, F.D.O.C. in General
And Hamilton C.I, Annex in Particular
Refuse to Honor "No Prolonged Standing"
Passes, Issued By the Medical Department.
At H.C.I. Annex if one Particular
officer Has Not Physically Seen A Person
Stand For the entire limit of his Pass,
He will Not Allow the Person to sit.
He Refuses to take into Account The
Person has to stand to walk to where
-ever that officer is, How long He
Has to stand to wait to Be Released
From His Dorm, How long He Had to
stand And Wait At various Gates to
Be Allowed through, Or How much
longer the Person is going to Have to
Stand in line to Accomplish what
-ever task He is Attempting. Nor
Will Security Allow That Person the "Standard"
"Rest Period (Of One Hour) Before He
Forces that Person to stand And move
on. This is Not Honoring the
Passes. Instead, the Person has to
Stand For the entire limit of His Pass,
And then MayBe Be Allowed to sit
outside, on the Ground, On Bird
Droppings, Human Spit, Nasty, etc. Cannot
without Any Seat. All the while
there Are Perfectly Good Seats in the
Area, Where He could sit, And Not
effect "security" in Any Way. This is
Not Humane or in the spirit of the Pass.

22

Statement Of Facts (2)

On 11/18/97 the Plaintiff Saw Dr. Gladson At New River West Medical Dept. With The complaint Of extreme Fatigue And other Symtons. The Doctor Ordered An Ammonia test Of his Blood, also Acknowledging the extreme Fatigue, But Offering no treatment Or Accom-modation.

On 1/27/98 The Plaintiff Again Complained Of extreme Fatigue, But the Medical Dept. Denied He Had Any Such Problem (even though it was Previously Documented) And Refused Any Sort Of treatment. IE: At Least Vitamins.

On 2/18/98 The Petitioner Was Sent to N.F.R.C. to See Dr. Radi Of the Gastrology Dept. Who Diagnosed Him As Having Hepatitis (types B.C.+D) Recommending Interfuon Treatment, After A Liver Biopsy.

On 3/2/98 The Petitioner Was Sent Back to N.F.R.C. to Receive Pre-Op For The Liver Biopsy, And On 3/3/98 Was transported to Jacksonville Hospital For The Biopsy.

Dr. Radi: Guaranteed That the Procedure Would Be Painless and Proceeded.

He made three (3) extremely pain-
-ful attempts, which left the patient
writhing around on the table in
extreme pain, unable to breathe
properly. Dr. Rad. never did extract
a satisfactory liver sample from that
episode.

So on 3/4/98 the Petitioner
underwent another Biopsy, by another
Doctor, sonogram assisted, which
went perfectly and painlessly. He
was then transported back to N.F.R.C.
Hospital for recovery.

On or about 3/6/98 he was
released from the hospital to the
compound.

On 3/8/98 the Petitioner experienced
extreme pain in the upper abdominal
area and went to the emergency
room. There he was examined,
given a pill for the pain, and was
instructed that if the pain did
not go away or got worse, to report
back to the emergency room, and
he would be admitted.

That evening as the pain had not
diminished at all, he reported back
to Emergency, was administered
Demerol, admitted, being placed
on a liquid diet.

24

Several Doctors For Several Days could Not figure out what was wrong. On 3/12/88 The Petitioner was Rushed Back to Jacksonville Hospital Via local Ambulance For An emergency Gall Bladder Operation. That Operation was Performed By Dr. Alan L. Smith. Later when the Operational Reports were Obtained By the Patient, it was Noted that there were several holes in the Gall Bladder And Alot of Blood & Clots.

On 3/21/88 The Patient was transported Back to N.F.R.C. Hospital to Be Admitted For Recovery.

On 4/1/88 The Petitioner Received His Second Shot Of The Interferon treatment Plan. He Received his Shots Regularly Along with Darvocet For the Side Effects, And on 4/10/88 was transferred to N.F.R.C. West.

On 4/14/88 The Petitioner was at the main unit of N.F.R.C. For Sick Call, When Mrs Cooley (a Nurse) Set An Appointment to See A Doctor, And Informed the Petitioner That "(she) was Going to Get Rid Of (him)", Disliking The Petitioner Personally And the Fact He needed So much medical Attention.

25

On 4/17/88 The Petitioner was transfered Back to Need River West C.I. (N.R.W.) And Received his Shot. On 4/24/88 He was transfered Back to N.F.R.C. For a Sonogram of The Liver.

From 4/29/88 Thru 6/1/88 The Petitioner was Forced to Refuse his Shots Because medication to Off-Set the Side effect would Not Be Administered By medical.

On 6/1/88 The Petitioner went to medical to Receive his Shot, and was Informed that HIS medication was Not Available as they had Run out. So Nurse Paige took Some one elses medication For my use. She mixed one white-capped vial with one Black-capped vial (one Premixed Dose, and one Powdered Dose) And Administered them to the Petitioner Against His Protests And Pointing out Her mistake. She Replied That She was the Nurse and Knew What She was Doing.

On 6/2/88 The Petitioner was Experiencing So Bad From The Double Doses Side effects, He could not even Attend Sick Call or The First two meals of The Day.

6/7/98

On or About the Petitioner left N.R.W. to go to N.F.R.C. For a Hernia operation. He Received his Proper Shots And Pain medication while There

On 7/6/98 The Petitioner was transfered Back to N.R.W., And had to Refuse his Shots Again For the Lack of Pain medication.

On 7/15/98 the medical Dept canceled the treatment Plan Because the Patient Refused to take the Shots w/o the necessary Pain medication for the Side effects.

On 8/10/98 the Petitioner was Again on the treatment Plan and was Prescribed tylenol 500 For the Side effects, But on this Date nurse Taylor would only give the Patient Regular Aspirin with his Shot Stating "Take that or nothing". this was Against what was Prescribed, especially in light of the Fact that the Patient Also has 4 ulcers.

On 10/12/98 the medical Dept. Again Ran out of the Patients Shot medication, So He was Not Able to Receive the Prescribed Shot treatment.

On 10/13/88 The Petitioner Went Again to N.F.R.C. to See Dr. Rabi Who Represented the medications, But the Patient Still Received no Shot.

On 10/26/88 The Petitioner was transferred to N.F.R.C. main unit, And On 10/29/88 transferred to Apalachee C.I. (A.C.I.) But did not Receive His Shot. He did not Receive A Shot until 11/5/98. Then On 11/7/88 the medical Dept. Denies any Knowledge of The Shot treatment So He did not Receive His Prescribed Shot.

On 11/9/88 The Patient Received His Shot Again, And kept Receiving His Shots Propealy And Regularly.

On 2/10/89 The Petitioner was Transferred to Gulf. C.I. (G.C.I.) And did not Receive any Shots, And On 3/12/89 was Informed By G.C.I. medical Staff that the treatment Plan Had Been completed.

On 5/19/89 the Petitioner Went to N.F.R.C. And Said Dr. Rabi who Restarted/Prescribed The Shot treatment Plan Again, And On 6/1/99 the Patient was transported Back to G.C.I.

On 7/13/99 The Petitioner was shipped Back to N.F.R.C. for his 3 month Appointment with Dr. Radi at Gastrology.

On 7/14/99 The Petitioner actually Saw the Doctor who Stated that, "Contrary to what the Gulf ct. Doctors Said, (He) was to be Getting three (3) Shots Per week", not the one shot per week that they were Administering.

On 7/21/99 The Petitioner had Blood Drawn for a C.V.C. Liver Function test.

On 8/17/99 The Petitioner Saw Dr. Radi Again who Prescribed 3 Shots Per week for a Year.

On 8/27/99 He was transfered to Baker. C.I. (B.C.I.) Having Been Coded a "Code 62" which means He was to be within an houer of a Hospital.

On 12/15/99 The Petitioner's medical Grade was Raised from a Grade 3 to a Grade 4 Because of his Hepatitis, Knee, Arthritis, and wrist Problems. Not to mention Hernias and Ulcers. This was Done By L.E. Chaone.

On 4/27/00 The Petitioner Saw C.M.O. Dr. Consuega for his Hepatitis Progress.

On 5/15/00 Petitioner Signed a Refusal for his Shot Because Baker ct. Refuses to Follow the treatment Plan.

28

On 5/17/00 he had to sign another refusal for the same reason as 5/15, and was told he would have to keep signing the forms until a doctor took the patient off the treatment plan.

On 5/26/00 he signed another refusal form, was not allowed a copy of any of the forms he signed, and later in the day, Dr. Arteaga canceled the treatment.

On 6/27/00 the petitioner was sent to N.F.R.C. to see Dr. Radi at gastrology, but once he got there was sent right back to B.C.I. because they failed to draw blood in preparation for the visit.

On 7/27/00 the petitioners medical grade was lowered back to a grade 3 for no reason and was transferred to Hamilton C.I. Annex (H.C.I.)

On 8/23/00 the petitioner was sent to N.F.R.C. gastrology clinic where Dr. Radi restarted him on Duo - Therapy (Interferon and Rebaveron Drugs) to be seen again in 5 months.

On 10/10/00 the petitioner was sent to N.F.R.C. gastrology dept, but was sent right back to H.C.I. for their failure to draw blood for lab results.

30

On 10/31/00 the Petitioner was called out for a Lab visit to get blood drawn, But the Lab Tech had "No Idea" what it was For, so She didn't draw any blood.

On 12/5/00 The Petitioner attended a Gastrology visit At N.F.R.C., Seeing Dr. Rabb who Informed his Patient that He was dying, the medication was doing No good, But would Not tell Him How much longer He had to live. He Further Stated that the Patients "Only Hope" was if they came out with A medical drug. He Stated that the various Diseases And their inconsistant way of Administering the Interferon made the Petitioner Build A Resistance to the treatment, So Now it Does No good.

Since that Date, the Petitioner has tried to get Further treatment As the F.D.A. has Approved other Drugs For Hepatitis, But the Nurses Refuse to Document the Requests Or to Refer the Patient to the Doctor. When The Petitioner Sees the doctor on Another matter And Brings up the Hepatitis, it is Ignored.

51

## Statement Of Facts (3)

On 12/23/98 the Petitioner Broke His eyeglasses which He Had Purchased while still Free. The Petitioner was Located At Apalachee C.I. At the time, and Reported the Accident to the Medical Dept. in an Attempt to Get A Replacement Pair, As The Petitioner can-not See without them. This Request went unHeeded.

The Petitioner was transferred to Gulf C.I. on 2/10/99 Still with Broken Glasses, And Requested that He Sees the eye-Doctor For A Replacement Pair

It was'nt until the Petitioner was At N.F.R.C. For An unrelated Problem that He managed to Get A Doctor to Set Him An Appointment to See the eye Doctor. This Happened on 8/3/99

On 8/16/99 The Petitioner Saw the eye Doctor Who Literally took no more than two (2) minutes to Give the Petitioner An eye exam, And Order new Glasses For Him. The Doctor Refused to Listen or take Heed Of the Fact His Patient Has An Astigmatism in one eye. The Doctor Stated the Petitioner would Receive His new Glasses in 2-4 weeks.

32

On 8/27/99 The Petitioner was Transferred to Baker C.I., Informing Them That He Still Had Not Received His Glasses.

On 12/15/99 At (B.K. C.I.) The Petitioner Had A 3-month "Chronic Clinic" Where He Presented The Issue of Glasses, And was told By DR. L.E. Chuong "To Wait until Next Year" to Get Glasses.

On 12/20/99 He Attended Sick Call And Presented The Glasses Problem Once Again.

On 1/10/00 The Petitioner Went to N.F.R.C. Eye Clinic Where The Doctor Stated He Would Receive A Pair In About 2 weeks, But never Administered Another eye exam. The Glasses were Received, But were The Wrong Prescription As they caused Head-aches, Blurred Vision, And Loss of Depth Perception - They were unuseable.

On 3/22/00 DR. Consuegra made an Appointment to See The eye Doctor to correct the Petitioner's Prescription for The Third (3rd) time.

On 6/26/00 The Petitioner Went to N.F.R.C. Again to Get His Prescription Corrected, But Received No eye exam and was told He Should Receive His 4th Pair In About 2-4 weeks.

On 7/27/00 The Petitioner was transfered to Hansford C.I. Annex, notifying them that glasses should arrive for him soon.

On 8/9/00 The Petitioners glasses arrived at H.C.I., But were still the wrong prescription and He refused to accept them. The nurse told the Petitioner that He would see the eye doctor "on about a month".

On 9/13/00 The Petitioner saw the same eye doctor that was at N.F.R.C. at H.C.I. clinic. The Doctor refused to examine the Petitioners eyes, stating that He "was stuck with the glasses" He had supplied. He further stated that the Petitioner could see at least 20/30 without checking either the Patients eyes or the correctness of the glasses. (Please Note: The Petitioner saw 20/20 with his own glasses from the streets) The glasses presented to the Doctor that He had made did not have the reading section, so He agreed to add that to another pair of glasses, which the Petitioner should receive in 2-4 weeks. The Doctor in question is Doctor Leonard Schloffman.

84

On 10/26/00 The Petitioner Received His Need Glasses, which Has the "Reading" Area (Prescribed w/o Any Exam) And He could See Slightly Better than with The Previous Pair. As He was Informed He "was Stuck" with them, Right or wrong, He Decided He would Have to use them, or not See At All.

These Glasses Gave the Petitioner Extreme Headaches, eyes would water, they made Him terribly Physically tired, Depth Perception was not Right, nor was Focus. These Symptoms were Presented to the medical Department At H.C.I. Numerous times to no avail. To Date, The Petitioner cannot See clearly, His Depth Perception is off, He cannot Read For Very long, And He Has A Constant Headache. The Nurses At H.C.I. Have checked His eyesight with An eye Chart, And claim the Petitioner can See 20/33 In one eye And 20/40 In The other, And refuse to Allow Another eye Doctor Appointment. The eye Doctor once Stated that D.O.C. Does not Require Him to Make the Petitioner See 20/20 (even though He can).

35

## Statement of Facts (4)

The Petitioner has been complaining of Severe muscle cramps in his legs, chest, neck, jaws, etc, since about 1998. All the Doctors refuse to give the Plaintiff anything to relieve this problem. One doctor stated that he used to prescribe something similar to mineral water, but now for unknown reasons, he will not do so.

Related or not, the Petitioner is not sure, but he also has severe back and chest pain in the left shoulder area/chest area. the pain has been so bad that he called a "medical emergency" at H.C.F. where they administered an E.K.G., and upon finding that "normal" dismissed the complaint and patient. This pain could be a pinched nerve in the spine, or it could be cancer but the medical department and doctors are apparently so unconcerned as to not even check these possibilities. More often than not they don't bother to document the complaint in the record.

As for the muscle cramps Dr. Mendez at H.C.I, prescribed arthritis medication, and when this

36

WAS Brought to the medical Dept's Attention, They Refused to Allow the Petitioner to See the Doctor to Get That mistake corrected. The Doctor HAS Done No exam or Asked Any Further Questions About the eardrops — just described arthritis medication.

The Petitioner HAS Also Been Diagnosed with Having A Deviated Septum, By DR. Emanuel Manuel at N.C.I. . He Informed the Petitioner that in order to Get that corrected So He could Breathe Properly He "Would Have to Get An Inmate to Break (His) Nose". The Deviated Septum HAS Been Being treated (Undiagnosed) for Years with Nasal Spray (which warned that it was only to Be used for no more than **3 Days**) But now As the Nasal Spray Has Made the Condition Worse, F.D. O. C. Employees will Not correct the Basic Problem. Having to wear Glasses only Makes the Problem worse By Putting Pressure on The nose, Further closing the Channel(s).

"The Petitioner Claims that His 8th Amendment Right to Be Free of Cruel And Unusual Punishment Are Being Violated, By The Dept.

## VIII    Relief Requested

The Plaintiff Requests this Honorable Court to order the Dept. of Corrections to See That _Proper_ medical care is Administered to Him; Seeing that _All_ of His medical Complaints are _Corrected_, Not Just "Addressed" By medical Staff, And Denied As which has Been Happening; And also that the plaintiff Receives compensatory money Damages for His Years of Pain, Suffering, And mental Anguish over the Poor treatment He Has Been Receiving. Furthermore He wishes an Instruction to Be issued Preventing the Dept. of Corrections From in Any way Rescinding the Corrective measures taken, And Ensuring the Plaintiff Receives _Proper_ medical Attention for the Rest of His Stay In Prison - He also Requests An Instruction Be issued to Prevent The Dept. From _Any_ Sort Of Retaliatory Action, Such As transferring Him to A Raebh or NASty Camp Or Personal Mistreatment By the Staff. He Also Requests Any And All Relief this Court May Deem Legal And Just.

## OATH

I Declare under the Penalty of Perjury that the Foregoing is true and correct.

Signed This __30th__ Day of __April__ 2002.

Laurence Spindler 144314
4x - 4 - 1108 - L
H.C.I. Annex
11419 CR 249
Jasper, Florida
32052

Copy 10/99

# ACKNOWLEDGEMENT RECEIPT OF
# SPECIAL SHOES

*I hereby acknowledge receipt of the special shoes with the understanding that replacement will be the obligation of the inmate if such is needed in less than a year unless worn out. The Department of Corrections allows an inmate to acquire special shoes via package permit or from their personal fund if approved by the institutional Superintendent.*

_____
*Inmate's Signature*

*144314*
_____                          *6-28-98*
*Inmate's DC Number*                                        *Date*

_____
*Witness' Signature*

_____                          *6-28-98*
*Name Stamp*                                                *Date*

*Reason for issuance of special shoes:*

_____ *Post Surgery Recuperation*

_____ *Surgical Deformity*

___✓ *Deformities*

_____ *Recent Foot Trauma Recuperation*        Gulf Correctional Institution
                                                 500 Ike Steele Road
                                                 Wewahitchka, FL 32465

*Issuing Institution:* _____

*Extraneous Circumstances (if reissued within one year):* _____

_____

_____

*Patients identification (Name: Last, First, Middle: DC Number: Race/Sex)*

*SPINDLER, LAURENCE   144314   W/M*

*DC4-774 (Nov. 1991)*                          White – Health Record
                                               Canary – Inmate

**MAILED / FILED**
WITH AGENCY CLERK

**SEP 30 1998**

Department of Corrections
Bureau of Inmate Grievance Appeals

**RECEIVED**

**SEP 11 1998**

Department of Corrections
Inmate Grievance Appeals

# STATE OF FLORIDA
## DEPARTMENT OF CORRECTIONS
### REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

TO: ☐ Superintendent   ☐ Assistant Superintendent   ☒ Secretary, Florida Department of Corrections

*CHIEF MEDICAL OFFICER*
*CHARLES MATTHEWS, M.D.*

FROM: SPINDLER, LAURENCE
Last Name, First, Middle Initial

Number
144314

Institution
NEW RIVER 98-625411

---

### PART A - INMATE GRIEVANCE

This formal grievance concerns the fact that I am being denied adequate Medical care. I have a number of Medical passes and Medications I have been taking for my Medical Condition that have either been taken away or not renewed. Passes: No lifting over 10 lbs. / Leg Brace / Lambs Wool / Stocking / Bed Rest Lay-in w/ Single Dose Medications: Darvocet / Tylenol 500 (Recid) / Vitamins / Arthritis Medications. All these passes and Medications were taken upon my return from Lake Butler where I had a Hernia Operation. I've been taking these Medications for sometime, and my condition is chronic and has not changed I have also

SEE ATTACHED

9/4/98
Date

_Laurence Spindler_
Signature of Grievant and D.C.# 144314

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS: _____ # _____ Signature

---

### PART B – RESPONSE

[response text illegible]

_____
Signature and Typed or
Printed Name
of Employee Responding

_Olester Dickens_
Signature of Superintendent,
Assistant Superintendent, or
Secretary's Representative

9-21-98
Date

MAILED / FILED
WITH AGENCY CLERK

OCT 01 1550

Department of Corrections
Bureau of Inmate Grievance Appeals

RECEIVED

SEP 1 6 1998

Department of Corrections
Inmate Grievances

# STATE OF FLORIDA
## DEPARTMENT OF CORRECTIONS
### REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

TO: ☐ Superintendent   ☐ Assistant Superintendent   ☒ Secretary, Florida Department of Correction   *HARRY K. SINGLETARY*

FROM: *Spindler, Laurince* _____ 144314 _____ *New River C.I.*
Last Name, First, Middle Initial          Number          Institution

98-625837

### PART A – INMATE GRIEVANCE

*This formal Grievance concerns the fact that I am being denied adequate medical care. I have a number of Medical Passes and medications I have been taking for my medical conditions that have either been taken or not renewed. Passes: No lifting over 10 lbs / Leg Brace / Warmer used / standing / Bed rest / Lay In / W/single Dose. Medications: Darvocet / Tylenol 300 / Pericol / Vitamins / Arthritis Medication. All these passes and medications were taken upon my return from Lake Butler where I had a Hernia Operation. I've been taking these medications for sometime, and my condition is chronic and has not changed. I have also been denied access.*

SEE ATTACHED   144324

_____   _____
*9/9/98*        Signature of Grievant and D.C.#
Date

**BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:** _____ / _____
                                                                          #    Signature

### PART B – RESPONSE

Your request for Administrative Remedy or Appeal has not been filed in compliance with Chapter 33-29.006, Inmate Grievance Procedure. You did not provide this office with a copy of the formal grievance filed at the institutional level as required by rule, or the reason you provided for by-passing that level of the grievance procedure is not acceptable.

Upon receipt of this response, if you are within the allowable time frames for processing a grievance, you may resubmit your grievance at your current location in compliance with Chapter 33-29, Inmate Grievance Procedure.

Based on the foregoing information, your grievance is returned without action.

_____          _____          *9-24-98*
Signature and Typed or          Signature of Superintendent,          Date
Printed Name                    Assistant Superintendent, or
of Employee Responding          Secretary's Representative

ORIGINAL: TO BE RETURNED TO GRIEVANT AFTER COMPLETION OF ACTION.

TEAR ON PERFORATION

Keep "111/02"

# INMATE REQUEST

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

(Instructions on Back)

Mail Number: _____
Team Number: _____
Institution: _____

| TO: (Check One) | ☐ Warden ☐ Asst. Warden | ☐ Classification ☐ Security | ☐ Medical ☐ Dental | ☒ Other Tallahassee I/m Grievance Coordinator |
|---|---|---|---|---|

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | Lawrence Spindler | 144314 | AK-G 1110 L | WSMW | 12/17/01 |

## REQUEST

I Request to Know If I Have exausted All Administrative Remedies For my medical complaints. I E: Glasses, Brace, Hepatitis "C", Chronic Fatigue, Special shoes, Deviated Septum.
— Thank You

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

─────────── DO NOT WRITE BELOW THIS LINE ───────────

## RESPONSE

DATE RECEIVED: 12/18/01

It is your responsibility to Keep up with your issues - you receive a receipt and a copy of the response to every grievance you file.

[The following pertains to informal grievances only:
Based on the above information, your grievance is _____. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): | Date: 12/18/01 |
|---|---|

Distribution: White -Returned to Inmate
Canary -Returned to Inmate

Pink -Retained by official responding, or if the response is to an informal grievance then forward to be placed in inmate's file.

DC6-236 (Revised 8-00)

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

# INMATE REQUEST

(Instructions on Back)

Mail Number: _____
Team Number: _____
Institution: _____

| TO:<br>(Check One) | ☑ Warden<br>☐ Asst. Warden | ☐ Classification<br>☐ Security | ☐ Medical<br>☐ Dental | ☐ Other |
| --- | --- | --- | --- | --- |

| FROM: | Inmate Name<br>Lawrence Spradler | DC Number<br>144314 | Quarters<br>AK-6<br>1110 L | Job Assignment<br>Hsman | Date<br>12/7/01 |
| --- | --- | --- | --- | --- | --- |

**REQUEST**

I Request to Know if I Have exhausted All Administrative Remedies For my medical complaints. I E: Glasses, Brace, Hepatitis "C", Chronic Fatigue, Special Shoes, Deviated Septum.

Thank You

All requests will be handled in one of the following ways:  1) Written Information or   2) Personal Interview.  All informal grievances will be responded to in writing.

---

## DO NOT WRITE BELOW THIS LINE

**RESPONSE**                                    **DATE RECEIVED:** 12/18/01

See attached.

[The following pertains to informal grievances only:

Based on the above information, your grievance is _____. (Returned, Denied, or Approved).  If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): | Date: 12/18/01 |
| --- | --- |

Distribution:     White   -Returned to Inmate          Pink   -Retained by official responding, or if the response is to an
                  Canary  -Returned to Inmate                   informal grievance then forward to be placed in inmate's file.

DC6-236 (Revised 8-00)

Recea 12/27/01

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

# INMATE REQUEST

(Instructions on Back)

Mail Number: _____
Team Number: _____
Institution: _____

| TO: (Check One) | ☐ Warden  ☐ Asst. Warden | ☐ Classification  ☐ Security | ☐ Medical  ☐ Dental | ☒ Other  Laundry  Ms. Geiger |
|---|---|---|---|---|

| FROM: | Inmate Name  Lawrence Spindler | DC Number  144314 | Quarters  @ 1110 L | Job Assignment  4Sun) | Date  12/20/01 |
|---|---|---|---|---|---|

## REQUEST

I was hold a "Soft Shoe Pass" which states I get my Soft Shoes from Laundry

I Require A Pair of 9½ D Soft Shoe.

I have been informed by officers that you have new stuff up there, And I Request A new Pair. the Pair of Size 11 that are worn out Does Not suffice.

Please tell me what & where it may obtain my new Shoes.

Thank You

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

--- **DO NOT WRITE BELOW THIS LINE** ---

## RESPONSE

DATE RECEIVED: 12/24

You have been totally mis informed. I do not have any soft shoes in your size. I do have sizes 6 & 7 only.

[The following pertains to informal grievances only:

Based on the above information, your grievance is _____. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): Andreas | Date: 12/24/01 |
|---|---|

Distribution:    White    -Returned to Inmate        Pink    -Retained by official responding, or if the response is to an
                 Canary   -Returned to Inmate                    informal grievance then forward to be placed in inmate's file.

DC6-236 (Revised 8-00)



**FLORIDA
DEPARTMENT of
CORRECTIONS**

Governor
**JEB BUSH**

*An Affirmative Action/Equal Opportunity Employer*

Secretary
**MICHAEL W. MOORE**

2601 Blair Stone Road • Tallahassee, FL 32399-2500

http://www.dc.state.fl us

October 18, 2000

Laurence Spindler
DC# 144314
Hamilton CI Annex
11419 CR 249
Jasper, FL 32052

Dear Inmate Spindler:

Your letter of October 3, 2000 was received at this office and in your letter you expressed three major concerns, you need glasses, a brace for your knee and also you need Nike Air shoes.

Please be advised that this office has consulted with your health care staff who reviewed the case and provided information to this office relating to the three issues you presented. As relates to your custom brace, the case was reviewed by the Executive Medical Director, who is the medical advisor for Utilization Management at North Florida Reception Center and it was his determination on 9/18/2000 that there was no need for a custom brace. The staff was instructed to place extra padding on the brace, which would reduce friction. You were seen in the eye clinic on 6/26/2000 and a new prescription was ordered. The facility is checking to see why the glasses were not provided to you before you left Baker CI. Based upon the information reviewed, it is indicated that new glasses were ordered and you should be receiving those soon. As far as your soft-shoes are concerned, a determination was made by your Chief Health Officer that the shoes you request are not medically authorized at the present time. This decision is based on the medical judgement of your physician.

In the future you are encouraged to attempt to resolve your problems at the institutional level and/or pursue the grievance process in accordance with Chapter 33 DC Rules.

Sincerely,

Emile L. Baudoin d'Ajoux
Impaired Inmate Services Coordinator

EBA/jw

c       SHSA, Kay Smith, Hamilton CI
        Inmate File, Central Records Management, Central Office



THE TREASURER OF THE STATE OF FLORIDA
DEPARTMENT OF INSURANCE

TOM GALLAGHER

March 13, 2001

Laurence Spindler, DC# 144314, Ax-4-2105-L
Hamilton Correctional Institution
11419 Southwest County Road, #249
Jasper, Florida 32052

RE:   Notice of Intent dated March 8, 2001, concerning
      medical care given while in State custody

Dear Mr. Spindler:

This will acknowledge the above referenced Notice.  It appears you are attempting to file a medical malpractice claim.  However, it does not appear you have complied with the requirements of F.S.766 and as a result we will not accept the notice as notice pursuant to F.S.766.

If you wish to review your Medicals, please address a request to the Department of Corrections for a copy of your medicals.  Thank you for your cooperation.

Sincerely,

*Mary Harvey*

Mary Harvey

MH/ps

TREASURER • INSURANCE COMMISSIONER • FIRE MARSHAL
• • •
MARY YHARVEY • RISK MANAGEMENT PROGRAM SPECIALIST • BUREAU OF STATE LIABILITY CLAIMS/RISK MANAGEMENT
200 EAST GAINES STREET • TALLAHASSEE, FLORIDA 32399-0338 • (850) 413-4864 • FAX (850) 488-6992

Affirmative Action / Equal Opportunity Employer

Marsha Lewis Brown, M.S.W., Chair
Jeannie Baker
Nereyda P. Clark, D.M.D.
Max C. Dertke, Ph.D.



Robert E. Windom, M.D., Legislative Liaison
H. Jack Floyd
Barbara S. Russell, R.N., M.P.H.

## STATE OF FLORIDA
## CORRECTIONAL MEDICAL AUTHORITY

November 3, 2000

Laurence Spindler
DC #144314
Hamilton Correctional Institution
11419 C.R. 249
Jasper, Florida 32052

Dear Inmate Spindler:

The Correctional Medical Authority received your letter on October 17, 2000, concerning the problems that you are having at Hamilton Correctional Institution.

The Correctional Medical Authority is not an operational branch of the Department of Corrections' Office of Health Services, but rather a monitoring and oversight agency for health care services provided by that office. Therefore, I can not address your specific concern, but will attempt to assist you by forwarding your correspondence and any attachments to the Department of Corrections' Office of Health Services for their consideration and review.

Sincerely,

Don Bennett

Don Bennett, M.B.A., C.C.H.P.
Executive Director

DB/klc

cc:    Emile Baudoin D'Ajoux, OHS

DEPARTMENT OF CORRECTIONS
OFFICE OF HEALTH SERVICES

## ACKNOWLEDGEMENT OF RECEIPT OF
## SPECIAL SHOES    *Lt Knee Brace*

I hereby acknowledge receipt of special ~~shoes~~ *Brace*. I understand that replacement will be my personal obligation if such is needed in less than a year (unless these shoes are worn out). I acknowledge that the Department of Corrections allows an inmate to acquire special shoes via package permit or from their personal funds, if approved by the institutional superintendent.

X _____    *11-5-99*
Inmate's Signature                       *11/5/99*
                                         Date

_____
Inmate's DC Number

_____
Witness's Signature
RICHARD WILLIS, CMTC
NFRC-SOPC

_____    *11/5/99*
Name Stamp                              Date

Reason for issuance of special shoes:

✓  Postsurgery recuperation
___  Significant Deformities
___  Recent foot trauma recuperation
___  Neurological problem

Issuing institution: _____

Extraneous circumstances (if reissued within one year): _____

_____

_____

Inmate's Name  *Spindler, Laurence*
DC#  *144314*     R/S  *w/m*
Date of Birth _____
Institution  *Marion CI*

Acknowledgement of Receipt of Special Shoes
DC4-774 (1/95)

White - Health Record
Canary - Inmate

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

## OPTOMETRIC PRESCRIPTION DISPLAY SHEET & RECEIPT OF SPECTACLES

PRIDE
Broward Division

*109844*

OPTICAL Rx SERVICE

NAME _Spindler, Lawrence_

NUMBER _144314_ DATE _9-13-00_

| DISTANCE | SPHERE | CYL. | AXIS | PRISM | DEC. |
|----------|--------|------|------|-------|------|
| R | -3.50 | -1.25 | 180 | | |
| L | -3.50 | -1.25 | 180 | | |

| ADD | R | +1.50 | SEGMENT HEIGHT | SEGMENT WIDTH | INSET | TOTAL INSET |
|-----|---|-------|----------------|---------------|-------|-------------|
| | L | | | | | |

**FRAMES**

| COLOR | EYE SIZE | BRIDGE SIZE | TEMPLE SIZE |
|-------|----------|-------------|-------------|
| | 54 | 24 | 6 |

SPECIAL INSTRUCTIONS:

Dr. _____

OPTICAL PRESCRIPTION (7/89)

, Optometric Services in Institutions, I, hereby acknowledge receipt of one pair of eyeglasses and understand I will not be provided an additional pair for a two-year period unless such requirement is caused by change in my vision.

_____   _10/26/00_
Inmate's Signature        Date

_____   _10/26/00_
Witness Signature/Stamp   Date

Inmate Name _Spindler, Lawrence_
DC# _144314_ R/S _____
Date of Birth _____
Institution _Hamilton_

Reference: HSB 15.02.10

Original – Health Record
Copy – Inmate

OPTOMETRIC PRESCRIPTION & RECEIPT OF SPECTACLES
DC4-784 (11/93)

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

## OPTOMETRIC PRESCRIPTION DISPLAY SHEET &
## RECEIPT OF SPECTACLES

**ATTACH LAST REPORT WITH TOP AT THIS LINE**

cyl. Ax
R -400 .75 180
L -400 .75 180
Add. 1.50

**ATTACH THIRD REPORT HERE AND SUCCEEDING ONES ON ABOVE LINES**

**ATTACH SECOND REPORT WITH TOP AT THIS LINE**

**ATTACH FIRST REPORT WITH TOP AT THIS LINE**

## ACKNOWLEDGEMENT RECEIPT OF SPECTACLES

*In accordance with Health Services Bulletin No. 15.02.10, Optometric Services in Institutions, I,* _____ *, hereby acknowledge receipt of one pair of eyeglasses and understand I will not be provided an additional pair for a two-year period unless such requirement is caused by change in my vision.*

_____          _____
**Inmate's Signature**                                      **Date**

_____    L. Mizelle, SRN     _____
**Witness Signature/Stamp**                Baker C.I.        **Date**

Inmate Name_____
DC#_____  R/S_____           Reference:  HSB 15.02.10
Date of Birth_____           Original - Health Record
Institution_____           Copy - Inmate

OPTOMETRIC PRESCRIPTION & RECEIPT OF SPECTACLES
DC4-784 (11/93)

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

## OPTOMETRIC PRESCRIPTION DISPLAY SHEET & RECEIPT OF SPECTACLES

**ATTACH LAST REPORT WITH TOP AT THIS LINE**

**ATTACH THIRD REPORT HERE AND SUCCEEDING ONES ON ABOVE LINES**

**ATTACH SECOND REPORT WITH TOP AT THIS LINE**

**ATTACH FIRST REPORT WITH TOP AT THIS LINE**

## ACKNOWLEDGEMENT RECEIPT OF SPECTACLES

*In accordance with Health Services Bulletin No. 15.02.10,  Optometric Services in Institutions, I, _____, hereby acknowledge receipt of one pair of eyeglasses and understand I will not be provided an additional pair for a two-year period unless such requirement is caused by change in my vision.*

_____          L. Mizelle, SRN
**Inmate's Signature**                    Baker C.I.              **Date** _____

_____                                  **Date** _____
**Witness Signature/Stamp**

Inmate Name_____
DC#_____R/S_____          **Reference:  HSB 15.02.10**
Date of Birth_____
Institution_____          **Original - Health Record**
                                                    **Copy - Inmate**

**OPTOMETRIC PRESCRIPTION & RECEIPT OF SPECTACLES**
**DC4-784 (11/93)**

## FLORIDA DEPARTMENT OF CORRECTIONS
### HEALTH SLIP/PASS

**The below-named inmate is authorized for:**

☑ Bed rest lay-in      From_____ To _5/11/0?_

☐ Low/bottom bunk   From_____ To_____

☐ No shave          From_____ To_____

☐ Restricted activity  From_____ To_____

Restrictions:_____

*Temporary wheel chair*

*By 5/11/07*

☐ Other:           From_____ To_____

_____

Inmate _Schindler_      Authorized

DC# _____  R/S___  by:_____

Date of Birth _____        **(Initial & Name Stamp)**

Institution _____  Date: _5/11/07_

**Health Slip/Pass**
**DC4-701D (2/96)**    White/Medical  Yellow/Security  Pink:/Inmate

T E M P O R A R Y

# FLORIDA DEPARTMENT OF CORRECTIONS
## HEALTH SLIP/PASS

**The below-named inmate is authorized for:**

☐ **Bed rest lay-in**      **From**_____ **To**_____

☐ **Low/bottom bunk**   **From**_____ **To**_____

☐ **No shave**               **From**_____ **To**_____

☒ **Restricted activity  From** 8/7/00 **To** 9 10/00

   **Restrictions:** i) knee brace
   2) standing >10 min
   3) lifting > #20

☐ **Other:**                 **From**_____ **To**_____

_____

_____

**Inmate** Sandlin Lawrence   **Authorized**
**DC#** 142131   **R/S** W/M   **by:** PK SR
**Date of Birth** 9-6-53            (Initial & Name Stamp)
**Institution** Ham ct      **Date:** 8/7/00

**Health Slip/Pass**           PRESTON T. KING, SRN
**DC4-701D (2/96)**            Hamilton CI

White/Medical  Yellow/Security  Pink:/Inmate

TEMPORARY

## FLORIDA DEPARTMENT OF CORRECTIONS
## HEALTH SLIP/PASS

**The below-named inmate is authorized for:**

☐ Bed rest lay-in      From_____   To_____

☐ Low/bottom bunk   From_____   To_____

☐ No shave             From_____   To_____

☐ Restricted activity   From_____   To_____

Restrictions:_____

_____

_____

☐ Other:          From 8/7/00 To 8/14/00

straw hat — don't rush....

_____

Inmate Saindler, Laure          Authorized SR

DC# 144 31 ℃      R/S w/4   by: P. K.

Date of Birth 9.6.53                (Initial & Name Stamp)

Institution Ham CT        Date: 8/7/00

PRESTON T. KING, SRN
Hamilton CI

**Health Slip/Pass**
**DC4-701D (2/96)**      White/Medical  Yellow/Security  Pink/Inmate

## FLORIDA DEPARTMENT OF CORRECTIONS
### DIET PRESCRIPTION/ORDER
DATE 8|22|v

**PHYSICIANS ARE TO PLACE A CHECK MARK AND SIGN INITIALS BESIDE THE APPROPRIATE DIET:**

**DIETS:**

| | |
|---|---|
| Clear Liquid Diet_____ | *1600 Calorie Regulated Diet_____ |
| Cold Liquid Diet_____ | |
| Full Liquid Diet_____ | *2200 Calorie Regulated Diet_____ |
| Puree Diet_____ | |
| Mechanical Dental Diet_____ | *2800 Calorie Regulated Diet_____ |
| Low Residue Diet _____ | 3600 Calorie Regulated Diet (w/ 3 meals and 3 snacks)_____ ✓ |
| Fat Intolerance Diet _____ | 4000 Calorie Regulated Diet (w/ 3 meals and 3 snacks)_____ |
| CSU (Suicide Precaution) Diet_____ | Prenatal Diet_____ |
| Predialysis Diet (60-65 gm PRO, 2 0-3 0 gm Na+, 3 0-3.2 gm K) _____ | Dialysis Diet (95-105 gm PRO, 2.0-3 0 gm Na+, 3.0-3.2 gm K)_____ |

*These diets contain <300 mg of Cholesterol and <2300 mg of sodium.

PATIENT TO STAY ON PRESCRIBED DIET FROM 8-21-00 TO 11-21-00

OBSERVATIONS_____

_____

DOCTOR OR CLINICAL ASSOCIATE:_____
(signature and stamp)

Inmate Name SPINDLER, LOU/LEREK EMANUEL

DC# ___ __ __ ___ R/S___ EMANUEL LEE MANUEL

Date of Birth ___ __ ___ STAFF PHYSICIAN

Institution HAMILTON HAMILTON C.I.

DIET PRESCRIPTION/ORDER          Distribution: White-Food Service  Canary-Inmate  Pink-Medical Record
DC4-728 (10-97)

G-2/10 L

## FLORIDA DEPARTMENT OF CORRECTIONS
## HEALTH SLIP/PASS

The below-named inmate is authorized for:

☐ **Bed rest lay-in**      From_____ To_____
☐ **Low/bottom bunk**   From_____ To_____
☐ **No shave**               From_____ To_____
☐ **Restricted activity**  From_____ To_____
   **Restrictions:**_____
   _____
   _____
   _____

☐ **Other:**              From _5-19-01_ To _5-21-01_
_wheel chair_____
_____

Inmate _Spindler, Lawrence_ Authorized
DC# _144314_   R/S _W/M_   by: _Br_
Date of Birth _9-6-53_                (Initial & Name Stamp)
Institution _HAM CI_   Date: _5-19-01_

B. THOMAS, SRN
HAMILTON C.I.

**Health Slip/Pass**
**DC4-701D (2/96)**      White/Medical  Yellow/Security  Pink:/Inmate